FAIRBANKS *v.* SARGENT.

*(Supreme Court, General Term, First Department. January 28, 1889.)*

SALE—BONA FIDE PURCHASERS—WHO ARE.
   U., a creditor of Z., placed an account against him in the hands of plaintiff, an attorney, for collection, agreeing that plaintiff should have one-third of the proceeds realized, whether money, securities, or property, and whether received through settlement or otherwise, the terms of settlement to be discretionary with U. Plaintiff brought suit on the account, pending which U assigned it to S., whom he owed, expressly stipulating that it was intended as collateral security. A compromise was made by S., U., and Z., without plaintiff's knowledge, by which S. released U., and U. released Z., of their respective debts, upon the delivery by Z. of certain bonds to S., who received and used them. S. was ignorant of plaintiff's contract with U. *Held* that, as S., under his assignment, had no power to compromise the claim, and assumed no such right, the settlement was the act of U alone, and S. was not liable to plaintiff for any part of the value of the bonds received. BARTLETT, J., dissenting.

Appeal from special term, New York county.

Action by Leland Fairbanks, Jr., against Winthrop Sargent, executor of Henry W. Sargent, deceased, to recover the value of one-third of certain bonds used and converted by said testator. There was a judgment for defendant, which was affirmed at general term, (39 Hun, 588,) and this judgment was reversed by the court of appeals, (9 N. E. Rep. 870.) A new trial resulted in a judgment for plaintiff, and defendant appeals.

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*Davenport, Smith & Perkins*, for appellant. *A. C. Brown*, for respondent.

VAN BRUNT, P. J. In July, 1869, one Henry A. Underwood, the surviving partner of the firm of J. A. Underwood & Son, having as such surviving partner claims against various individuals, among others John J. Zabriskie, made an agreement with the respondent that for his services in endeavoring to collect these claims he should have one-sixth of whatever amount of money, securities, or property should be received on account of any of such claims as should be settled without suit, and one-third of whatever amount of money, securities, or property should be collected or in any way realized or received (whether on settlement or without setttlement) on account of any of said claims as shall be put in suit either in this or any other state or country. In 1870 the plaintiff, through local counsel, brought an action on the claim against Zabriskie for said Underwood to recover the sum of about $200,000, which action was pending at the times hereinafter mentioned. Prior to 1871, Henry W. Sargent, the appellant's testator, had had business relations consisting of the purchase and sale of stocks with the firm of J. A. Underwood & Son, who were brokers in the city of New York, and subsequently with the said Henry A. Underwood, the surviving partner of that firm. In the fall of 1871, Underwood, being indebted to said Sargent in a large sum of money, without the knowledge or consent of the respondent, by an assignment in writing, expressing on its face that it was given as collateral security, assigned the said claim against Zabriskie to said Sargent as collateral security for his said indebtedness to Sargent, and at the same time, as a further collateral security for said debt, said Underwood assigned to said Sargent an interest he had in a contract for the building of a railroad in the state of Georgia. In 1872, Sargent, through his counsel, Monell, was pushing Underwood for a settlement of the claim against him, and such counsel made inquiries of the respondent as to the value of the Zabriskie claim, who told him of certain offers of settlement that had been made, but the respondent gave him no notice of his interest in the Zabriskie claim, nor did Mr. Sargent know of such interest until after the consummation of the transactions hereinafter mentioned. Mr. Monell was related in some way to one John A. C. Gray, who was related to Zabriskie, and in conversation with Gray Monell told him that Sargent was anxious to get the payment of his claim, and asked him if the Zabriskie claim could probably be settled as the respondent represented. Mr. Gray thereupon wrote to Mr. Zabriskie's brother, who was a wealthy man, about it, and he said he would give $20,000 to help his brother out. This information Mr. Gray seems to have communicated to Mr. Monell, who, prior to the 12th of June, 1872, saw Underwood, and told him that the Zabriskie claim could be settled for $20,000, and that if he would pay Sargent the $20,000, Mr. Sargent would accept it in payment of his claim against Underwood, and give up the collaterals. Mr. Underwood said that if he could settle Sargent's claim against him for the $20,000, he would settle the Zabriskie claim. Mr. Monell then arranged for a meeting between Underwood and Gray, and they had a conversation together in a room separate from Mr. Monell. Mr. Gray informed him that Mr. Zabriskie's brother would advance $20,000 if the claim against Zabriskie could be settled. Underwood states that he told Gray of the respondent's claim, and subsequently Monell, which both deny, and that if Sargent would give him a release in full he was willing to settle the suit. Mr. Underwood, upon coming out of the room in which he had been talking with Mr. Gray, told Mr. Monell that he would accept his proposition, provided Sargent would give him an absolute release of all claims he had of every kind and description, not only against him, but against the old firm. Mr. Monell told him that he had no power to settle in this way, and that he would have to consult his client, Mr. Sargent. After seeing his client, and getting his consent to a general release, such a release was prepared, and an appointment was made for a meeting on June 17th. At this meeting Mr. Monell was informed by Mr. Gray that he was not prepared to give him the

money on that day, and spoke of giving some bonds instead of money, and Mr. Monell stated that if the securities were good Mr. Sargent would take them instead of the money.

Mr. Monell then left with Mr. Gray the general release by Sargent to Underwood, and also the collateral securities hereinbefore mentioned, or sent them to Mr. Gray the next day, and Mr. Underwood left with Mr. Gray his release of his claim against Zabriskie; all these papers to be delivered upon the payment of $20,000 by Mr. Gray to Mr. Sargent. Mr. Sargent accepted the bonds instead of cash, and Mr. Gray delivered his release and the collaterals to Mr. Underwood, and used Mr. Underwood's release of Mr. Zabriskie for the benefit of Zabriskie. Mr. Underwood did not know at this time of the substitution of bonds for money. The appellant's testator received the bonds in good faith, and had no notice whatever of the agreement between Underwood and the respondent, and, in consideration of their payment to him, released both Underwood and his firm from all claims, and returned to Underwood the collateral he held. The plaintiff, subsequently learning of this settlement, brought this action to recover one-third of said bonds so received, or their value. Upon the trial a recovery was had by the plaintiff, and from the judgment thereupon entered this appeal is taken.

It is urged upon the part of the respondent that, this case, upon the same facts, having been before the court of appeals, all the questions of law have been determined in his favor. From a careful examination of the decision of the court of appeals, I have become convinced that the court of appeals has not attempted to pass upon the case as now before the court. The court seems to have decided that where a chose in action is assigned by an assignment absolute in form even though such assignment is given as collateral security for a pre-existing debt, such assignee, as the real owner, possessed of the absolute right to settle and discharge it, and receive the proceeds of the settlement. Such assignee, the thing assigned being incapable of physical possession or manual delivery, takes his interest subject to the rule that he who is prior in time is prior in right, and therefore Sargent took his interest in the Zabriskie claim subject to the previous agreement between Underwood and the respondent, and Sargent, having exercised his rights by settling and discharging the claim against Zabriskie, was bound to account to the respondent under his agreement with Underwood, although ignorant of the existence of this agreement, because in discharging the debtor from his liability thereon he did so subject to his liability to unknown claimants, with equities superior to his own. The conclusions arrived at upon the previous appeal seem to have been based upon the fact that the assignment from Underwood to Sargent was absolute in form, and that, therefore, Sargent was the real owner of the claim, could do with it as he pleased, and did so in settling the claim with Zabriskie, which power, the court say, it was conceded by the appellant, Sargent possessed. The decision seems to have turned upon the point that Underwood could not confer upon Sargent an absolute title to this claim, freed from his agreement with the respondent, but that by the assignment which Underwood gave to Sargent, Sargent became the absolute owner of the claim, and required no authority or consent from Underwood to authorize him to settle the same.

The proof now before the court shows an entirely different state of facts from this. The assignment of the Zabriskie claim from Underwood to Sargent was not only not absolute in form, but it expressed upon its face that it was given as collateral to Underwood's indebtedness. Sargent was not then the real owner of the claim, even upon the face of the assignment, and it is not conceded that he possessed any right to settle and discharge this claim. Sargent, having only a qualified title in this claim by the assignment to him, could only sell the claim upon notice to the assignor, or proceed to collect it upon behalf of the real owner, and apply the proceeds in the extinguishment

of the debt of the real owner to him, or, if there was not enough realized to do this, to apply the same in its diminution, or he might foreclose his lien thereon by action. He had no absolute power of settlement without the authority or consent of the assignor, and in fact had no power to settle at all. He could receive payment or foreclose his lien, and these are all the powers which were conferred upon him by the assignment, which upon its face did not pretend to clothe the assignee with the title, but only to give him a lien thereon to the extent of the debt due from the assignor to him. And in the whole transaction Sargent never assumed to have the power to settle the claim, but, on the contrary, it depended upon Underwood whether the claim should be settled or not. Underwood was to discharge the claim, not Sargent, and in the matter of compromise the determination of Underwood was to govern. Underwood could not settle the claim without Sargent's consent because of Sargent's lien thereon, and therefore it was a matter of importance to Underwood to know upon what terms he could get Sargent's consent, and he drew the best bargain he could for himself. The transaction was consummated by Underwood releasing Zabriskie, and Sargent releasing Underwood and his firm. Sargent claimed no right to settle this claim, and did not settle it. His position was that if he could realize a certain sum he would discharge Underwood from his obligations to him, and return to him his collateral, and this is exactly what Sargent did, and nothing more.

The respondent, by his agreement with Underwood, had left it in Underwood's power to settle this claim without any notice to him, and this right Underwood exercised. It is doubtful if anybody but Underwood, under any circumstances, under his agreement with the respondent, could exercise this right as far as the respondent is concerned, it being a personal trust reposed in Underwood. The respondent, in making this agreement, undoubtedly intended to look to Underwood for his share in the realizations; otherwise he would not have given him absolute power as to the method and terms of settlement. The agreement contained no notice to the debtor which limited or abridged any right of Underwood to still act as the sole owner of the claim, and the debtor was not at all interested therein, as by its express terms Underwood has express power to act. Under these circumstances, Sargent being only a lienor, having no power whatever to settle this claim, and Underwood having full power to do so, notwithstanding his agreement with the respondent, the true conclusion to be derived is that Underwood discharged the claim with Sargent's consent, and not that Sargent discharged the claim with Underwood's consent, because Sargent had no power whatever to settle or discharge. It might be held, if Sargent had the power of discharge, that the act was his, although he did not himself do it; but where he neither has the power, nor assumes to do the act, I do not know upon what principle the act can be called his. I do not find it anywhere even hinted at that if this is the true construction of this transaction the respondent has any claim against the appellant. If the respondent chose to leave in Underwood's hands the power to settle these claims, and receive the proceeds without any notice to him, and Underwood has exercised this power, and has disposed of the whole of the proceeds arising from the settlement in procuring releases from his own obligations, disregarding his duty to the plaintiff, and has thus violated the trust imposed in him by the respondent, it seems to me, in considering the equities of the case, that it is more equitable that the respondent should suffer, he having placed in Underwood power to act, than a person who was entirely innocent, and who, upon partial payment, has released Underwood and his firm. The respondent, by his agreement with Underwood, placed it in the power of Underwood to discharge these claims, and, by disposing of the proceeds of settlement, to defraud him, and if Underwood exercised that power it does not seem equitable that an innocent party should suffer therefor. I am of the opinion, therefore, that the facts now presented essentially

differ from those considered by the court of appeals upon the former appeal, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event.

DANIELS, J., concurs. .

BARTLETT, J., (*dissenting.*) I am unable to concur in reversing this judgment. I can see no difference in principle between the case disclosed by the present record and the case when it was before the court of appeals.